**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alfredo Lucero Garcia,<br><br>    Petitioner,<br><br>v.<br><br>Charles L Ryan, et al.,<br><br>    Respondents. | No. CV-15-00025-PHX-DGC<br><br>**ORDER** |

Before the Court is Petitioner Alfredo Garcia's Motion for Temporary Stay and Abeyance and for Authorization to Appear in Ancillary State-Court Proceedings. (Doc. 36.) Garcia asks the Court to stay and hold his case in abeyance while he pursues state court relief. He also seeks permission for his federal habeas counsel to appear on his behalf in state court. Respondents filed a response opposing a stay and Garcia filed a reply. (Docs. 37, 38.) For the reasons set forth below, the motion will be denied.

**I.    BACKGROUND**

On the afternoon of May 21, 2002, Daniel Anderson was tending bar at Harley's Club 155.[1] Steven Johnson, the bar's owner, was talking with Anderson. Garcia entered and asked to use the restroom, and they directed him toward the rear of the bar, where there was a back door. Johnson went to the rear of the bar and began fixing a broken

---

[1] These facts are taken from the decision of the Arizona Supreme Court affirming Garcia's murder conviction and death sentence. *State v. Garcia*, 224 Ariz. 1, 7, 226 P.3d 370, 376 (2010).

ATM. Anderson followed and they continued talking. Johnson kneeled beside the ATM with a stack of $20 bills.

Garcia burst through the back door and shouted "drop the money." Directly behind Garcia was James Sheffield, who was crouching and carrying a gun. Johnson stood, threw the $20 bills on the ground, and said "just get out, get out of here." Garcia pushed Johnson against the wall. Anderson stood "frozen" until Johnson looked at him and said "get out of here." Anderson ran into the bar's office, pushed an alarm button, and escaped. He heard a gunshot before entering the office and a scuffling sound followed by a second gunshot as he fled.

Anderson went to another bar and called the police. Upon arriving at Harley's, police found Johnson's body outside the back door and $20 bills scattered nearby. Police also viewed video recordings from bus security cameras on the afternoon of Johnson's murder, which showed Garcia and Sheffield boarding a bus near the crime scene and later getting off at the same stop.

Garcia and Sheffield were arrested. Each was indicted on one count of first-degree murder and one count of armed robbery. Their trials were severed. On November 13, 2007, a jury found Garcia guilty on both counts. After learning of possible juror misconduct, the trial court empaneled a new jury for the aggravation and penalty phases. The second jury found that Garcia was a major participant in the felony and was recklessly indifferent to Johnson's life. The jury also found two aggravators: that Garcia had been previously convicted of a serious offense, *see* A.R.S. § 13–751(F)(2), and that he had committed first-degree murder for pecuniary gain, *see* A.R.S. § 13–751(F)(5). Concluding there was no mitigation sufficiently substantial to call for leniency, the jury determined that Garcia should be sentenced to death. The Arizona Supreme Court affirmed. *State v. Garcia*, 224 Ariz. 1, 7, 226 P.3d 370, 376 (2010).

After unsuccessfully pursuing post-conviction relief in state court, Garcia filed a petition for writ of habeas corpus in this Court on December 16, 2015. (Doc. 22.) The petition has been fully briefed. (Docs. 29, 35.) Garcia seeks a stay of these proceedings

so he can return to state court and present claims that he alleges are newly available based on two recent United States Supreme Court opinions: *Lynch v. Arizona*, 136 S. Ct. 1818 (2016) (per curiam), and *Hurst v. Florida*, 136 S. Ct. 616 (2016).

## II. ANALYSIS

Garcia's habeas petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(b)(1)(A). Although AEDPA does not deprive courts of the authority to stay habeas corpus petitions, it "does circumscribe their discretion." *Rhines v. Weber*, 544 U.S. 269, 276 (2005). The Supreme Court has emphasized that the stay and abeyance of federal habeas petitions is available only in limited circumstances. *Id.* at 277. "Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition." *Id.*

A writ of habeas corpus may not be granted unless it appears that a petitioner has exhausted all available state court remedies. 28 U .S.C. § 2254(b)(1); *see also Coleman v. Thompson*, 501 U.S. 722, 731 (1991). In Arizona, there are two avenues for petitioners to exhaust federal constitutional claims: direct appeal and post-conviction relief proceedings ("PCR"). Rule 32 of the Arizona Rules of Criminal Procedure governs PCR proceedings. It provides, in relevant part, that a petitioner is precluded from relief on any ground that was finally adjudicated on the merits on appeal or in a previous collateral proceeding or that could have been raised on appeal or in a previous collateral proceeding. Ariz. R. Crim. P. 32.2(a). The preclusive effect of Rule 32.2(a) may be avoided only if a claim falls within certain exceptions and the petitioner can justify why the claim was omitted from a prior petition or not presented in a timely manner. *See* Ariz. R. Crim. P. 32.1(d)–(h), 32.2(b), 32.4(a).

When a petitioner has an available remedy in state court that he has not procedurally defaulted, it is appropriate for a federal court to stay the habeas proceedings

if (1) there was good cause for the petitioner's failure to exhaust his claims first in state court, (2) his unexhausted claims are potentially meritorious, and (3) there is no indication that he engaged in intentionally dilatory litigation tactics. *See Rhines*, 544 U.S. at 277.

Garcia contends that under Rule 32.1(g), the Supreme Court's decisions in *Lynch* and *Hurst* provide an available remedy in state court. Rule 32.1(g) provides that a defendant may file a petition for post-conviction relief on the ground that "[t]here has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence." Ariz. R. Crim. P. 32.1(g).

Arizona courts have characterized a significant change in the law as a "transformative event," *State v. Shrum*, 220 Ariz. 115, 118, 203 P.3d 1175, 1178 (2009), and a "clear break" or "sharp break" with the past. *State v. Slemmer,* 170 Ariz. 174, 182, 823 P.2d 41, 49 (1991). "The archetype of such a change occurs when an appellate court overrules previously binding case law." *Shrum*, 220 Ariz. at 118, 203 P.3d at 1178. A statutory or constitutional amendment representing a definite break from prior law can also constitute a significant change in the law. *Id.* at 119, 203 P.3d at 1179; *see State v. Werderman*, 237 Ariz. 342, 343, 350 P.3d 846, 847 (App. 2015).

**A.** *Lynch v. Arizona*

In *Lynch*, 136 S. Ct. 1818, the Supreme Court applied *Simmons v. South Carolina*, 512 U.S. 154 (1994), to a capital sentencing in Arizona. *Simmons* held that when future dangerousness is an issue in a capital sentencing determination, the defendant has a due process right to require that his sentencing jury be informed of his ineligibility for parole. 512 U.S. at 171.[2]

Lynch was convicted of murder and other crimes. 136 S. Ct. at 1819. Before the penalty phase of his trial began, the state successfully moved to prevent his counsel from

---

[2] On direct appeal, Garcia, citing *Simmons*, raised a claim challenging the lack of a jury instruction on parole eligibility. The Arizona Supreme Court denied the claim, in part because "the State did not emphasize Garcia's future dangerousness." *Garcia*, 224 Ariz. at 18, 226 P.3d at 387. Garcia raises the same allegation in Claim 13 of his habeas petition. (Doc. 22 at 146.)

informing the jury that, if the defendant did not receive a death sentence, he would be sentenced to life in prison without possibility of parole. *Id.* at 1819. The jury sentenced him to death. *Id.* On appeal, Lynch argued that because the state had made his future dangerousness an issue in arguing for the death penalty, the jury should have been given a *Simmons* instruction stating that the only non-capital sentence he could receive under Arizona law was life imprisonment without parole. *Id.* The Arizona Supreme Court affirmed, holding that the failure to give the *Simmons* instruction was not error because Lynch could have received a life sentence that would have made him eligible for release after 25 years—even though any such release would have required executive clemency. *Id.* at 1820.

The United States Supreme Court reversed. *Id.* The Court reiterated that under *Simmons* and its progeny, "where a capital defendant's future dangerousness is at issue, and the only sentencing alternative to death available to the jury is life imprisonment without possibility of parole," the Due Process Clause "entitles the defendant to inform the jury of [his] parole ineligibility, either by a jury instruction or in arguments by counsel." *Id.* at 1818 (internal quotations omitted). The Court explained that neither the possibility of executive clemency nor the possibility that state parole statutes will be amended can justify refusing a parole-ineligibility instruction. *Id.* at 1820.

*Lynch* does not represent a change in the law. It simply applies existing law to an Arizona case. It is not a transformative event of the kind described by Arizona courts in interpreting Rule 32.1(g). In *Shrum*, for example, the Arizona Supreme Court cited *Ring v. Arizona*, 536 U.S. 584 (2002), as a "significant change in the law." 220 Ariz. at 119, 203 P.3d at 1179. *Ring* "expressly overruled" *Walton v. Arizona*, 497 U.S. 639 (1990). As the Arizona Supreme Court explained, "before *Ring*, a criminal defendant was foreclosed by *Walton* from arguing that he had a right to trial by jury on capital aggravating factors; *Ring* transformed existing Sixth Amendment law to provide for just such a right." *Shrum*, 220 Ariz. at 119, 203 P.3d at 1179.

In contrast to the holding in *Ring*, which expressly overruled precedent and

invalidated Arizona's capital sentencing scheme, *Lynch* did not transform Arizona law. The holding does not constitute a significant change in law for purposes of Rule 32.1(g). Therefore, the claim is precluded from review in state court.

Respondents also argue, correctly, that *Lynch* would not apply retroactively. *Lynch* applies *Simmons* to an Arizona capital sentencing. In *O'Dell v. Netherland*, 521 U.S. 151, 167 (1997), the Supreme Court rejected the argument that *Simmons* represented a "watershed" rule of criminal procedure that would apply retroactively. Like *Simmons*, *Lynch* is procedural and nonretroactive. Therefore, Garcia is not entitled to retroactive application of *Lynch*, and his claim fails to meet the exception to preclusion set out in Rule 32.1(g).

### B. *Hurst v. Florida*

In *Hurst*, 136 S. Ct. 616, the Supreme Court held that Florida's capital sentencing scheme violated *Ring*. Under the Florida scheme, a jury makes an advisory verdict while the judge makes the ultimate factual determinations necessary to sentence a defendant to death. *Id.* at 621–22. The Court held that this procedure was invalid because it "does not require the jury to make the critical findings necessary to impose the death penalty." *Id.* at 622.

*Hurst* did nothing to transform Arizona law. *Hurst* does not hold, as Garcia suggests, that a jury is required to find beyond a reasonable doubt that the aggravating factors outweigh the mitigating circumstances.[3] (Doc. 41 at 7; Doc. 45 at 4–5.) *Hurst* held only that Florida's scheme, in which the jury rendered an advisory sentence but the judge made the findings regarding aggravating and mitigating factors, violated the Sixth Amendment. *Hurst*, 136 S. Ct. at 620. *Hurst* did not address the process of weighing the

---

[3] On direct appeal, Garcia alleged that Arizona's death penalty scheme was unconstitutional because it did not require the State to prove beyond a reasonable doubt that the mitigating circumstances are not sufficiently substantial to call for leniency. The Arizona Supreme Court denied the claim. *Garcia*, 224 Ariz. at 16, 226 P.3d at 385. In Claim 25 of his habeas petition, Garcia alleges that his rights were violated by the trial court's failure to instruct the jury that the State bore the burden of proving its mitigation rebuttal evidence beyond a reasonable doubt. (Doc. 22 at 192.) The Arizona Supreme Court also rejected this claim. *Garcia*, 224 Ariz. at 22, 226 P.3d at 391.

- 6 -

aggravating and mitigating circumstances. Indeed, the Supreme Court has held that the sentencer may be given "unbridled discretion in determining whether the death penalty should be imposed after it has found that the defendant is a member of the class made eligible for that penalty." *Zant v. Stephens*, 426 U.S. 862, 875 (1983); *see Tuilaepa v. California*, 512 U.S. 967, 979–80 (1994). In *Zant*, the Court explained that "specific standards for balancing aggravating against mitigating circumstances are not constitutionally required." *Id.* at 875 n.13; *see Franklin v. Lynaugh*, 487 U.S. 164, 179 (1988) ("[W]e have never held that a specific method for balancing mitigating and aggravating factors in a capital sentencing proceeding is constitutionally required.").

In Arizona, in accordance with *Ring* and *Hurst*, the jury makes factual findings regarding the aggravating and mitigating factors to determine the appropriate sentence. *Hurst* did not effect a change in Arizona law for purposes of Rule 32.1(g).

Moreover, even if *Hurst* were a significant change in the law, it does not apply retroactively. The Supreme Court has held that "*Ring* announced a new procedural rule that does not apply retroactively to cases already final on direct review." *Schriro v. Summerlin*, 542 U.S. 348, 358 (2004). *Hurst*, which applies *Ring* in Florida, is also nonretroactive. *See Lambrix v. Sec'y, Florida Dep't of Corr.*, 851 F.3d 1158, 2017 WL 992416 at *4 n.2 (11th Cir. 2017) (explaining that "under federal law *Hurst*, like *Ring*, is not retroactively applicable on collateral review"). This claim does meet the Rule 32.1(g) exception to preclusion.

### III. APPOINTMENT OF COUNSEL

Garcia asks the Court to authorize the Federal Public Defender's ("FPD") office to represent him in state court. The Criminal Justice Act provides for appointed counsel to represent their client in "other appropriate motions and procedures." 18 U.S.C. § 3599(e).

The Supreme Court interpreted § 3599 in *Harbison v. Bell*, 556 U.S. 180 (2009), holding that the statute "authorizes federally appointed counsel to represent their clients in state clemency proceedings and entitles them to compensation for that representation." *Id.* at 194. The Court explained that "subsection (a)(2) triggers the appointment of

counsel for habeas petitioners, and subsection (e) governs the scope of appointed counsel's duties." *Id.* at 185. The Court noted, however, that appointed counsel is not expected to provide each of the services enumerated in section (e) for every client. Rather, "counsel's representation includes only those judicial proceedings transpiring 'subsequent' to her appointment." *Id.* at 188.

*Harbison* addressed the concern that under the Court's interpretation of § 3599, federally appointed counsel would be required to represent their clients in state retrial or state habeas proceedings that occur after counsel's appointment because such proceedings are also "available post-conviction process." *Id.* The Court explained that § 3599(e) does not apply to those proceedings because they are not "properly understood as a 'subsequent stage' of judicial proceedings but rather as the commencement of new judicial proceedings." *Id.* at 189. As to state post-conviction proceedings, the Court noted, "State habeas is not a stage 'subsequent' to federal habeas. . . . That state post-conviction litigation sometimes follows the initiation of federal habeas because a petitioner has failed to exhaust does not change the order of proceedings contemplated by the statute." *Id.* at 189–90; *see Irick v. Bell*, 636 F.3d 289, 292 (6th Cir. 2011); *Lugo v. Sec'y, Florida Dep't of Corr.*, 750 F.3d 1198, 1213 (11th Cir. 2014), *cert. denied sub nom. Lugo v. Jones*, 135 S. Ct. 1171 (2015) (explaining "a state prisoner is not entitled, as a matter of statutory right, to have federally paid counsel assist him in the pursuit and exhaustion of his state post-conviction remedies, including the filings of motions for state collateral relief . . . "); *Gary v. Warden, Ga. Diagnostic Prison*, 686 F.3d 1261, 1274 (11th Cir. 2012) (explaining "§ 3599 does not provide for federally-funded counsel to assist someone standing in Gary's shoes in pursuing a DNA motion, the results of which might serve as the basis for an extraordinary motion for a new trial").

Nevertheless, this Court has the discretion to appoint federal counsel to represent Garcia in state court. In *Harbison* the Supreme Court noted that "a district court may determine on a case-by-case basis that it is appropriate for federal counsel to exhaust a claim in the course of her federal habeas representation." 556 U.S. at 190 n.7.

The Court has determined that Garcia is not entitled to a stay. Based on that determination, together with the *Harbison* Court's discussion of the parameters of § 3599(e), the Court finds it is not appropriate to authorize the FPD to represent Garcia in state court.

## IV. CONCLUSION

Garcia is not entitled to a stay. *Lynch* and *Hurst* are not significant changes in the law for purposes of Rule 32.1(g), nor would they apply retroactively. Because the claims are precluded from review in state court, a stay of this matter would be futile. The Court will also exercise its discretion to deny the appointment of the FPD.

**IT IS ORDERED** denying Garcia's Motion for Temporary Stay and Abeyance and for Authorization to Appear in Ancillary State-Court Proceedings. (Doc. 36.)

Dated this 1st day of May, 2017.

_____
David G. Campbell
United States District Judge