**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alfredo Lucero Garcia, | No. CV-15-00025-PHX-DGC |
| Petitioner, | <u>DEATH PENALTY CASE</u> |
| v. | **ORDER** |
| Charles L. Ryan, et al., | |
| Respondents. | |

Before the Court is Petitioner Alfredo Lucero Garcia's motion for evidentiary development. (Doc. 40.)[1] The motion is fully briefed. (Docs. 46, 47.) For the reasons stated below, the motion will be denied.

## I. BACKGROUND

A jury convicted Petitioner of armed robbery and first degree murder for the 2002 shooting of Steven Johnson. Petitioner was sentenced to death. The Arizona Supreme Court set forth the following facts in its opinion affirming the convictions and sentence:

> On the afternoon of May 21, 2002, Daniel Anderson was tending bar at Harley's Club 155. Steven Johnson, the bar's owner, was talking with Anderson. Garcia entered and asked to use the restroom; they directed him toward the rear of the bar, where there was also a back door. Shortly thereafter, Johnson went to the rear of the bar and began fixing a broken ATM. Anderson followed and they continued talking. Johnson kneeled beside the ATM with a stack of $20 bills.

---

[1] These citations refer to the document and page numbers generated by the Court's electronic case filing system.

Garcia suddenly burst through the back door and shouted "drop the money." Directly behind Garcia was James Taylor Sheffield, who was crouching and carrying a gun. Johnson stood, threw the $20 bills on the ground, and said "just get out, get out of here." Garcia pushed Johnson against the wall. Anderson stood "frozen" until Johnson looked at him and said "get out of here." Anderson ran into the bar's office, pushed an alarm button, and then escaped. He heard a gunshot before entering the office and heard a scuffling sound followed by a second gunshot as he fled.

Anderson went to another bar and called the police. Upon arriving at Harley's, police found Johnson's body outside the back door and $20 bills scattered nearby. Police also viewed video recordings from bus security cameras on the afternoon of Johnson's murder. The recordings showed Garcia and Sheffield boarding a bus near the crime scene and later getting off at the same stop. The investigation ultimately led police to arrest Garcia on June 1 and Sheffield on June 6, 2002.

Garcia and Sheffield were each indicted on one count of first degree murder and one count of armed robbery; their trials were later severed. On November 13, 2007, a jury found Garcia guilty on both counts. After learning of possible juror misconduct, the trial court empaneled a new jury for the aggravation and penalty phases. The second jury found that Garcia was a major participant in the felony and was recklessly indifferent to Johnson's life. This jury also found two aggravators: Garcia had been previously convicted of a serious offense, *see* A.R.S. § 13-751(F)(2) (2009); and he had committed first degree murder for pecuniary gain, *see* A.R.S. § 13-751(F)(5). Concluding there was no mitigation sufficiently substantial to call for leniency, the jury determined that Garcia should be sentenced to death.

*State v. Garcia*, 224 Ariz. 1, 7 ¶¶ 2-5, 226 P.3d 370, 376 (2010). Petitioner filed a petition for post-conviction relief ("PCR"), which the state court denied without holding an evidentiary hearing. The Arizona Supreme Court denied review.

Petitioner filed a petition for writ of habeas corpus in this Court on December 16, 2015. (Doc. 22.) The petition raises 48 claims. In the pending motion, Petitioner seeks evidentiary development with respect to seven of those claims.

## II.   APPLICABLE LAW

Federal habeas claims are analyzed under the framework of the Antiterrorism and

Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2241 et seq. The AEDPA defines the substantive and procedural limits on the claims a capital habeas petitioner may bring, and the Rules Governing Section 2254 Cases define the types of evidentiary development a petitioner may seek if his claims otherwise meet the requirements of the AEDPA.

### A. Exhaustion and Procedural Default

The AEDPA requires that a writ of habeas corpus not be granted unless it appears that the petitioner has properly exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1); *see Coleman v. Thompson*, 501 U.S. 722, 731 (1991). To properly exhaust state remedies, the petitioner must "fairly present[]" his claims to the state's highest court in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). The petitioner meets this requirement by describing the operative facts and the federal legal theory on which the habeas claims are based so that state courts have a fair opportunity to apply controlling legal principles to the facts bearing upon the claims. *See Anderson v. Harless*, 459 U.S. 4, 6 (1982).

A claim may be "technically" exhausted if the petitioner has lost the opportunity to raise his claim on "independent and adequate" state law grounds. *Coleman*, 501 U.S. at 732 ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him."). Such technically exhausted claims, however, are considered procedurally defaulted and are not subject to habeas relief. *See id.* at 731-32; *Smith v. Baldwin*, 510 F.3d 1127, 1139 (9th Cir. 2007).

In Arizona, there are two avenues for petitioners to present and exhaust federal constitutional claims in state court: direct appeal and PCR proceedings. Rule 32 of the Arizona Rules of Criminal Procedure governs PCR proceedings and provides that a petitioner is procedurally barred from relief on any claim that could have been raised on appeal or in a prior PCR petition. Ariz. R. Crim. P. 32.2(a)(3). If an Arizona court concludes that a claim was waived under this rule, that independent and adequate procedural ground precludes federal habeas relief. *See Hurles v. Ryan*, 752 F.3d 768, 780

(9th Cir. 2014).

Procedural default, however, is not an insurmountable bar to relief. A petitioner may raise a defaulted claim if the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

For ineffective assistance of counsel claims, a petitioner may establish cause for a procedural default "by demonstrating two things: (1) 'counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984),' and (2) 'the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.'" *Cook v. Ryan*, 688 F.3d 598, 607 (9th Cir. 2012) (quoting *Martinez v. Ryan*, 566 U.S. 1, 14 (2012)); *see Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014), *overruled on other grounds by McKinney v. Ryan*, 813 F.3d 798 (9th Cir. 2015). The Ninth Circuit has explained that "PCR counsel would not be ineffective for failure to raise an ineffective assistance of counsel claim with respect to trial counsel who was not constitutionally ineffective." *Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012).

The *Martinez* exception to procedural default applies only to claims of ineffective assistance of trial counsel; it has not been expanded to other types of claims. *Pizzuto v. Ramirez*, 783 F.3d 1171, 1177 (9th Cir. 2015) (explaining that the Ninth Circuit has "not allowed petitioners to substantially expand the scope of *Martinez* beyond the circumstances present in *Martinez*"); *Hunton v. Sinclair*, 732 F.3d 1124, 1126-27 (9th Cir. 2013) (noting that only the Supreme Court can expand the application of *Martinez* to other areas); *see Davila v. Davis*, 137 S. Ct. 2058, 2062-63, 2065-66 (2017) (explaining that the *Martinez* exception does not apply to claims of ineffective assistance of appellate counsel).

- 4 -

**B.** **Evidentiary Development**

Under the Rules Governing Section 2254 Cases, a petitioner may seek to discover and introduce additional evidence in federal court. But the court's discretion to grant such requests is limited.

In *Cullen v. Pinholster*, 563 U.S. 170 (2011), the Court emphasized that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.* at 181; *see also Murray v. Schriro*, 745 F.3d 984, 998 (9th Cir. 2014) ("Along with the significant deference AEDPA requires us to afford state courts' decisions, AEDPA also restricts the scope of the evidence that we can rely on in the normal course of discharging our responsibilities under § 2254(d)(1)."). *Pinholster* does not, however, bar evidentiary development where the court has determined, based solely on the state court record, that the petitioner "has cleared the § 2254(d) hurdle." *Madison v. Comm'r, Ala. Dep't of Corr.*, 761 F.3d 1240, 1249-50 & n.9 (11th Cir. 2014); (citing *Pinholster*, 563 U.S. at 185); *see Henry v. Ryan*, 720 F.3d 1073, 1093 n.15 (9th Cir. 2013).

To clear the § 2254(d) hurdle, a petitioner must establish that the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented" in state court. 28 U.S.C. § 2254(d). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). A petitioner who meets the deferential standards of § 2254(d) may be entitled to evidentiary development if he meets the standards set forth below.

**1.** **Discovery**

A habeas petitioner is not entitled to discovery "as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997); *see Campbell v. Blodgett*, 982 F.2d 1356, 1358 (9th Cir. 1993). Rule 6(a) of the Rules Governing Section 2254 Cases provides that

a judge "may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery."  Whether a petitioner has established "good cause" for discovery requires a habeas court to determine the essential elements of the petitioner's substantive claim and evaluate whether "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief."  *Bracy*, 520 U.S. at 908-09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)) (internal quotation marks omitted).

### 2.    Evidentiary Hearing

An evidentiary hearing is authorized under Rule 8 of the Rules Governing § 2254 Cases.  Pursuant to § 2254(e)(2), however, a federal court may not hold a hearing unless it first determines that the petitioner did not "fail to develop" the factual basis of the claim in state court.  *See Williams v. Taylor*, 529 U.S. 420, 431-32 (2000).  "[A] failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel."  *Id.* at 432; *see Baja v. Ducharme*, 187 F.3d 1075, 1078-79 (9th Cir. 1999).  "[A] petitioner who 'knew of the existence of [] information' at the time of his state court proceedings, but did not present it until federal habeas proceedings, 'failed to develop the factual basis for his claim diligently.'"  *Rhoades v. Henry*, 598 F.3d 511, 517 (9th Cir. 2010).

Absent unusual circumstances, diligence requires that a petitioner "at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law."  *Williams*, 529 U.S. at 437.  The mere request for an evidentiary hearing, however, may not be sufficient to establish diligence if a reasonable person would have taken additional steps.  *See Dowthitt v. Johnson*, 230 F.3d 733, 758 (5th Cir. 2000) (petitioner requested hearing but found not diligent because he failed to present affidavits of family members that were easily obtained without court order and with minimal expense); *see also Alley v. Bell*, 307 F.3d 380, 390-91 (6th Cir. 2002); *Koste v. Dormire*, 345 F.3d 974, 985-86 (8th Cir. 2003); *McNair v. Campbell*, 416 F.3d 1291, 1299-1300 (11th Cir. 2005).

If the petitioner failed to develop the claim in state court, a federal court may hold an evidentiary hearing only if the claim relies on (1) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," or (2) "a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2). In addition, "the facts underlying the claim [must] be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the [petitioner] guilty of the underlying offense." *Id.*

Moreover, an evidentiary hearing is not required if the issues can be resolved by reference to the state court record. *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) ("It is axiomatic that when issues can be resolved with reference to the state court record, an evidentiary hearing becomes nothing more than a futile exercise."); *see Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."). Likewise, "an evidentiary hearing is not required if the claim presents a purely legal question and there are no disputed facts." *Beardslee v. Woodford*, 358 F.3d 560, 585 (9th Cir. 2004); *see Hendricks v. Vasquez*, 974 F.2d 1099, 1103 (9th Cir. 1992).

### 3. Expansion of the Record

Finally, under Rule 7 of the Rules Governing Section 2254 Cases, a federal habeas court is authorized to expand the record to include additional material relevant to the petition. The purpose of expansion of the record under Rule 7 "is to enable the judge to dispose of some habeas petitions not dismissed on the pleadings, without the time and expense required for an evidentiary hearing." Advisory Committee Notes, Rule 7, 28 U.S.C. foll. § 2254; *see also Blackledge v. Allison*, 431 U.S. 63, 81-82 (1977); *Downs v. Hoyt*, 232 F.3d 1031, 1041 (9th Cir. 2000) (explaining that the need for an evidentiary hearing may be obviated by expansion of record).

Section 2254(e)(2) limits a petitioner's ability to present new evidence through a

Rule 7 motion to the same extent that it limits the availability of an evidentiary hearing. *See Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1241 (9th Cir. 2005), *overruled on other grounds by Daire v. Lattimore*, 812 F.3d 766 (9th Cir. 2016). Accordingly, when a petitioner seeks to introduce new affidavits and other documents never presented in state court, the petitioner must either demonstrate diligence in developing the factual basis in state court or satisfy the requirements of § 2254(e)(2).

## III.  ANALYSIS

Petitioner seeks discovery, an evidentiary hearing, or expansion of the record on Claims 1, 2, 4, 5, 9, 15, and 21. These include both exhausted and procedurally defaulted claims. The Court addresses Petitioner's evidentiary development requests as follows.

### A.  Ineffective Assistance of Counsel Claims

Petitioner seeks evidentiary development on claims of ineffective assistance of trial counsel during all phases of the trial (Claims 1 and 2), as well as ineffective assistance of PCR and appellate counsel (Claim 15). Petitioner breaks Claims 1 and 2 into multiple subclaims, some of which were raised and denied on the merits in state court, and others that were procedurally defaulted in state court, as explained on a claim-by-claim basis below.

For claims of ineffective assistance of counsel that have not been procedurally defaulted, the relevant principals are set forth in *Strickland*. To prevail under *Strickland*, a petitioner must show that counsel's representation fell below an objective standard of reasonableness and that the deficiency prejudiced the defense. 466 U.S. at 687-88.

The inquiry under *Strickland* is highly deferential, and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." 466 U.S. at 689; *see Cox v. Ayers*, 613 F.3d 883, 893 (9th Cir. 2010). To satisfy *Strickland*'s first prong, a defendant must overcome "the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

With respect to *Strickland*'s second prong, a petitioner must affirmatively prove prejudice by "show[ing] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability "is a probability sufficient to undermine confidence in the outcome." *Id.*

### 1. Claim 1

In Claim 1, Petitioner alleges that his trial counsel was ineffective during the penalty phase in three ways: (A) for failing to adequately investigate and present readily available mitigation evidence; (B) for failing to object to the trial court's alleged refusal to provide the jury with Sheffield's plea agreement; and (C) for failing to object to the (F)(5) aggravating factor as unconstitutional. (Doc. 22 at 40-71.) Petitioner further alleges in Claim 1D that the cumulative impact of these failures violated his rights under the Sixth and Fourteenth Amendments. (*Id.* at 71-72.) In support of these claims, Petitioner requests discovery, expansion of the record, and an evidentiary hearing.

The parties agree that Petitioner adequately raised Claim 1A in state court (Docs. 22 at 48, 29 at 36), and that Claims 1B and 1C were not raised in state court and are therefore procedurally defaulted (Docs. 22 at 75-76, 29 at 56, 58). The parties further do not dispute that Petitioner raised Claim 1D in his PCR petition but failed to appeal its denial by including it in his petition for review to the Arizona Supreme Court. (Docs. 22 at 79, 29 at 62.) The parties dispute, however, whether Petitioner's failure to appeal Claim 1D renders the claim procedurally defaulted.

As set forth below, the Court finds that Claim 1A is exhausted but without merit, and Claims 1B, 1C, and 1D are procedurally defaulted. Claim 1 is therefore denied.

### a. Claim 1A

Petitioner alleges that his trial counsel failed to pursue and present adequate mitigation evidence during his trial. (Doc. 22 at 48-75.) As this claim was raised and decided on the merits in state court, Petitioner is entitled to evidentiary development only if his claim satisfies § 2254(d). *See Pinholster*, 563 U.S. at 180-81; *Henry*, 720 F.3d

at 1093 n.15. Petitioner must also establish that he did not fail to develop evidence related to this claim in state court under § 2254(e). *See Rhoades*, 598 F.3d at 517.

Petitioner alleges that the PCR court unreasonably applied clearly established federal law under § 2254(d)(1) by (1) holding that trial counsel's decisions were "sound trial strategy" without first assessing whether counsel's decisions were made after an adequate investigation (Doc. 22 at 54-56), and (2) failing "to assess the sufficiency of mitigating evidence, as a whole, weighed against the weak aggravating factors" (*id.* at 56-57).

First, Petitioner is correct that counsel cannot choose a sound mitigation strategy without initially performing a reasonable mitigation investigation. *Strickland*, 466 U.S. at 691 ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."); *Wiggins v. Smith*, 539 U.S. 510, 523 (2003) ("In assessing counsel's investigation, we must conduct an objective review of their performance, measured for 'reasonableness under prevailing professional norms,' . . . which includes a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time[.]'" (citations omitted)). Contrary to Petitioner's arguments, however, the PCR court did appropriately address the reasonableness of the scope of his counsels' mitigation investigation as well as his counsels' decisions regarding whether and how to use the mitigating evidence they obtained through their investigation.

The PCR court first addressed Petitioner's mitigation investigation claim by detailing the investigative efforts of Petitioner's trial team based on the record before it. (PCR Ruling at 19-20.)[2] It then proceeded to evaluate the decisions trial counsel made based on their investigation. (*Id.* at 20.) The court found that Petitioner's trial counsel "conducted a mitigation investigation," including by securing a neuropsychological assessment performed by Dr. Kiran Amin, and by assessing Petitioner's "drug use,

---

[2] "PCR Ruling" refers to the PCR court's dispositive ruling (Doc. 29-2, Ex. QQQ), and "PCR Petition" refers to Petitioner's PCR petition filed in state court (Doc. 29-1, Ex. II).

intelligence . . ., and his dysfunctional family background." (*Id.* at 21, 25.) The court ultimately concluded that counsel's actions were reasonable and, addressing prejudice, that counsel's performance did not call into question the fairness of the result. (*Id.*)

This analysis is consistent with *Strickland* and is not a misapplication of clearly established federal law under § 2254(d)(1). *See Strickland*, 466 U.S. at 686 ("The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.").

Second, Petitioner alleges that the state court failed to apply clearly established federal law by declining to assess the mitigation as a whole compared to the aggravating factors. The Court disagrees.

In its decision, the PCR court stated:

> The proper prejudice standard for evaluating a claim of [ineffective assistance of counsel] in the context of the penalty phase mitigation investigation requires a probing and fact-specific analysis that considers the totality of the available mitigation evidence, both that adduced at trial and the evidence adduced in the post-conviction proceedings, in order to assess whether there is a reasonable probability that defendant would have received a different sentence after a constitutionally sufficient mitigation investigation. *Sears v. Upton*, 130 S. Ct. 3259 (2010).

(PCR Ruling at 19.) This is consistent with the federal authority cited by Petitioner. *See e.g.*, *Wiggins*, 539 U.S. at 534 ("In assessing prejudice, we reweigh the evidence in aggravation against the totality of available mitigating evidence."). (Doc. 22 at 56.) After citing this standard, the PCR court proceeded to evaluate all of the mitigating evidence in the record and ultimately concluded that even the cumulative effect of trial counsel's alleged failure to investigate and present mitigation evidence did not prejudice Petitioner. (PCR Ruling at 26.) Petitioner has not shown that the PCR court failed to apply clearly established federal law.

Petitioner next alleges, under § 2254(d)(2), that the PCR court made unreasonable conclusions of fact related to whether Petitioner's trial counsel acted strategically when

they relied heavily on one witness—a mitigation specialist—during the penalty phase. State-court factual determinations are accorded substantial deference and may not be characterized as unreasonable because this Court would reach a different conclusion in the first instance. *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015) (citing *Wood v. Allen*, 558 U.S. 290, 301 (2010)). Deference, however, "does not imply abandonment or abdication of judicial review, and does not by definition preclude relief." *Id.* (internal quotation marks omitted).

Each of the factual determinations Petitioner challenges is based on the state court's necessarily "strong presumption" that trial counsel's decisions were strategic in nature. *Strickland*, 466 U.S. at 689. A court may not "indulge '*post hoc* rationalization' for counsel's decisionmaking that contradicts the available evidence of counsel's actions." *Hernandez v. Chappell*, 878 F.3d 843, 850 (9th Cir. 2017) (quoting *Richter*, 562 U.S. at 109). But where counsel's conduct is not explained in the record, courts may "entertain the range of possible reasons [] counsel *may* have had" for their actions. *Id.* at 851 ("Were the record ambiguous or silent as to why [petitioner's] counsel did not present the diminished capacity defense, we might consider the state's hypothetical strategic reasons.").

Petitioner first alleges that his counsel should have had at least two expert witnesses testify on his behalf during the penalty phase, including Dr. Miller, an addiction specialist that his counsel had retained but did not call to testify, and an unspecified psychiatrist that he alleges could have explained Petitioner's "brain damage and resulting cognitive deficits." (Doc. 22 at 57-59.) Although Petitioner's trial counsel did retain a psychologist, Dr. Amin, who opined on Petitioner's mental state, Petitioner does not assert that his counsel erred in failing to call her. Rather, he claims that her report put his counsel on notice that they should have retained a different psychiatrist to evaluate him and testify on his behalf.

Before the PCR court, Petitioner presented analyses from two experts, Drs. Paul Beljan and Alan Abrams, to establish that Petitioner's trial counsel could have discovered

and presented additional mitigating evidence to the jury. (*See* PCR Petition at 59-64.) He did not submit statements from his trial counsel explaining the bases for their decisions to pursue or present certain evidence. Although Petitioner did summarily request an evidentiary hearing to further support his claims, the court denied his request.[3]

Based on this limited record, the PCR court concluded that Petitioner's counsel may have determined not to call Dr. Miller because Dr. Miller's report references Petitioner's past gang activity and drug use. (PCR Ruling at 20, 25.) There is no dispute that Dr. Miller's report included references to Petitioner's past gang involvement and drug use, and Petitioner did not present to the PCR court statements from his trial counsel regarding their reasons for excluding Dr. Miller's testimony.

Petitioner summarily asserts that his counsel could not have reasonably feared that Dr. Miller's testimony would open the door to testimony regarding gang activity because such a conclusion "is not supported by the record." (Doc. 22 at 49.) In light of the sparse record before the PCR court, however, the court was entitled to conceive of reasons his counsel may have reasonably acted the way they did. "[G]ang affiliation evidence is prejudicial because it invites a jury to find a defendant guilty by association." *Ayala v. Chappell*, 829 F.3d 1081, 1097 (9th Cir. 2016). It was not objectively unreasonable for the court to conclude that Petitioner's counsel was attempting to avoid introducing such evidence.

Petitioner also disputes the adequacy of trial counsel's investigation and presentation of mitigation related to his cognitive function. He asserts that Dr. Amin was not qualified to handle the requested evaluation, was provided inadequate background

---

[3] Petitioner, citing *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004), asserts that the state court's fact-finding was unreasonable because the court allegedly failed to adequately consider the limited evidence Petitioner submitted with his PCR petition. (Doc. 22 at 51.) He does not, however, specifically allege that the PCR court's denial of his request for an evidentiary hearing rendered the state court fact-finding process unreasonable. *See Hibbler v. Benedetti*, 693 F.3d 1140, 1147 (9th Cir. 2012) ("In some limited circumstances, we have held that the state court's failure to hold an evidentiary hearing may render its fact-finding process unreasonable under § 2254(d)(2)."). Accordingly, the Court will not address this issue.

information, and administered improper tests.  (Doc. 22 at 64-65.)  He further asserts that Dr. Amin's report put trial counsel on notice that they should have hired a second expert in psychology to evaluate Petitioner.  (*Id.* at 66-67.)  Addressing this claim, the PCR court concluded that "any mental health involvement is mere speculation based on the possibility that defendant's background may have made him susceptible to sustaining head injuries," and that "[t]rial counsel's actions appear to be consistent with a strategy of minimizing defendant's role, cultivating sympathy or empathy and focusing on co-defendant as the shooter."  (PCR Ruling at 22-23.).

The PCR court's conclusions are not objectively unreasonable.  "[W]here counsel is on notice that his client may be mentally impaired, counsel's failure to investigate his client's mental condition as a mitigating factor in a penalty phase hearing, without a supporting strategic reason, constitutes deficient performance."  *See Wallace v. Stewart*, 184 F.3d 1112, 1117 (9th Cir. 1999).  Here, Petitioner's trial counsel identified evidence that Petitioner was abused as a child and may have sustained head injuries as a result.  Trial counsel therefore appropriately retained a psychologist, Dr. Amin, to evaluate Petitioner's cognitive function.

Petitioner did not provide the PCR court with evidence supporting his assertion that trial counsel failed to provide Dr. Amin with the information necessary to reach her conclusions.  Nor did Petitioner provide evidence that trial counsel knew or should have known that Dr. Amin was unqualified.  Petitioner had the opportunity to supply the PCR court with evidence to support these arguments, but failed to do so.  He cannot now submit the evidence he could have presented in state court.  *See Williams*, 529 U.S. at 432.

Ultimately, Dr. Amin described Petitioner as someone with low average and borderline IQ scores, similarly average to low scores in areas such as memory, perception, and executive function, a "moody, angry, suspicious and resentful" personality, and a profile "consistent with a history of antisocial behavior, hostility, bitterness, [and] distrust."   (PCR Petition, Ex. 60 at 6-7.)   Absent evidence that

Petitioner's counsel improperly prepared Dr. Amin or that they knew or should have known she was not qualified to evaluate Petitioner, Petitioner's counsel was not inherently deficient in relying on Dr. Amin's conclusions rather than retaining an alternative expert. "[W]hile there may be a duty to seek out psychiatric evaluation of a client where appropriate, there is no duty to ensure the trustworthiness of the expert's conclusions." *Babbitt v. Calderon*, 151 F.3d 1170, 1174 (9th Cir. 1998).

Petitioner cites *Blanton v. Quarterman*, 489 F. Supp. 2d 621, 713 (W.D. Tex. 2007), *aff'd*, 543 F.3d 230 (5th Cir. 2008) (denying habeas relief), for the proposition that an antisocial personality disorder diagnosis "is hardly the appropriate place to end an inquiry into a capital murder defendant's character." Doc. 22 at 58-59. Yet that court ultimately concluded that "petitioner failed to present the state habeas court with any evidence showing petitioner's trial counsel acted in an objectively unreasonable manner in relying upon the diagnosis and conclusions of [the mental health expert] in formulating petitioner's punishment-phase trial strategy." *Id.* at 697. Here too, Petitioner did not present the PCR court with adequate evidence that his counsel acted unreasonably when they relied on Dr. Amin's conclusions.

The PCR court speculated that once Petitioner's counsel had Dr. Amin's evaluation, Petitioner's counsel could have reasonably decided to focus on Petitioner's strengths—such as his history of nonviolence despite his traumatic childhood—and to avoid his weaknesses—such as his behavioral instability. Doing so, the court reasoned, could have been reasonably calculated to prevent the jury from misconstruing Petitioner's weaknesses as aggravating rather than mitigating in nature. (PCR Ruling at 21-22, 25.) Petitioner did not rebut the presumption that his trial counsel employed such a strategy, and this Court cannot conclude that the PCR court's factual determinations were unreasonable in light of the limited evidence before it.

Finally, Petitioner challenges his counsels' failure to present lay testimony during the penalty phase. The PCR court noted that Petitioner's mitigation specialist testified regarding matters that the other potential witnesses could have covered. (PCR Ruling

- 15 -

at 24.)  In the absence of contrary evidence, it was not unreasonable for the PCR court to conclude that it was likely a strategic decision whether to present mitigation through a mitigation specialist, lay witnesses, or both.  *Cf. Lynch v. Sec'y, Fla. Dep't of Corr.*, 776 F.3d 1209, 1227 n.15 (11th Cir. 2015) (counsel was not deficient for electing to present mitigation "through a mental health expert instead of lay witnesses and documents").  There is nothing in the record to indicate that the mitigation would have been more compelling if it had been presented through lay witnesses.  That the mitigation specialist's presentation appears, in hindsight, to have turned out less compelling than counsel would have liked does not render counsels' performance inadequate.  *See Strickland*, 466 U.S. at 689.

In sum, none of Petitioner's arguments that the PCR court's decision violates the standards set forth in §§ 2254(d)(1) or (d)(2) are meritorious.  Claim 1A is denied.

### b.      Claims 1B and 1C

In Claims 1B and 1C, Petitioner alleges that his trial counsel performed ineffectively by not objecting to the trial court's failure to provide the jury with Sheffield's plea agreement, and by failing to challenge the (F)(5) aggravating factor as unconstitutional.

Claims 1B and 1C were not raised in state court.  Petitioner concedes that these claims are therefore procedurally defaulted but asserts that he can overcome his default by establishing cause and prejudice under *Martinez*.  (Doc. 22 at 75-77.)  To support this argument, Petitioner requests evidentiary development, including discovery, expansion of the record, and an evidentiary hearing.  (*See* Doc. 40 at 38-40.)

When a petitioner asserts the ineffective assistance of PCR counsel as cause to excuse the default of a claim, "the district court should allow discovery and hold an evidentiary hearing where appropriate to determine whether there was 'cause' under *Martinez* for the state-court procedural default and to determine, if the default is excused, whether there has been trial-counsel [ineffective assistance of counsel]."  *Detrich v. Ryan*, 740 F.3d 1237, 1246 (9th Cir. 2013).  To establish "cause" under *Martinez*, a

petitioner must allege an underlying ineffective assistance of counsel claim that is "substantial." *See Cook*, 688 F.3d at 607.

It is evident from the state court record, however, that Claims 1B and 1C are without merit, and it is therefore unnecessary to permit evidentiary development to allow Petitioner to establish cause under *Martinez*.

### i. Claim 1B

Petitioner argues that he was prejudiced by his trial counsel's failure to object when the trial court ruled that Sheffield's plea agreement was inadmissible in the penalty phase. (Doc. 22 at 75-76.) During jury deliberations in the penalty phase, the jury requested Exhibit 203, the plea agreement between Sheffield and the State in a different case. (RT 12/18/07 at 22:17-23:12.)[4] Due to a misunderstanding regarding the exhibit numbers, the judge believed Exhibit 203 had not been admitted and denied the jury's request. (*See* Doc. 22 at 76.) Neither defense counsel nor the state took issue with the trial court's decision. (RT 12/18/07 at 86.)

Even assuming *arguendo* that Petitioner's failure to bring the mistake to the court's attention "was not within the range of competence demanded of attorneys" in capital cases, Petitioner cannot establish any likelihood that his counsel's failure to object influenced the outcome of his case. *Strickland*, 466 U.S. at 691 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.").

Petitioner claims, summarily, that his trial counsel's failure to ensure the jury could further examine the plea agreement "undermines confidence in the jury verdict at sentencing." (Doc. 22 at 76.) This conclusory assertion does not establish prejudice. There was substantial testimony about the plea agreement, which was admitted. (RT 12/18/07 at 10-23.) Petitioner has provided no reason to believe that objecting to the trial court's mistake would have impacted the outcome of his case.

---

[4] "RT" refers to the reporter's transcripts from Garcia's state trial court proceedings.

Petitioner further asserts that he was prejudiced by the resulting standard of review in his direct appeal. (Doc. 22 at 76.) This argument is wholly speculative. Petitioner asserts, and the record indicates, that the court's error was not an exercise of discretion, but rather was the result of confusion over a renumbered exhibit. Under these circumstances, there is no reason to believe that if Petitioner's counsel brought the error to the court's attention at the time, the court would not have corrected the error by providing the exhibit to the jurors, in which case the issue would not have been raised on direct appeal at all.

Moreover, "it is within the trial court's discretion to designate the exhibits to be taken to the jury room." *Town & Country Sec. Co. v. Place*, 79 Ariz. 122, 125, 285 P.2d 165, 167 (1955) ("Counsel for defendant had every opportunity to examine [the exhibit] and to impeach the entries therein, so it does not appear that the court abused its discretion in keeping the exhibit from the jury."). Thus, even if counsel had objected, and the trial court had denied the objection and refused to submit the exhibit to the jury, Petitioner has not established that it is likely the Arizona Supreme Court would have reversed the denial on direct appeal.

In sum, Petitioner has not established that his trial counsel's failure to object to the court's misunderstanding would have had any impact on the outcome of either his trial or his direct appeal. Because Petitioner fails to show that the underlying ineffective assistance of counsel claim is a "substantial" one of "some merit," the procedural default of this claim is not excused under *Martinez*.

### ii. Claim 1C

As noted, the jury found that Petitioner had committed first degree murder for pecuniary gain. *See* A.R.S. § 13-751(F)(5). Petitioner argues that his trial counsel failed to object to the (F)(5) aggravating factor as unconstitutional in violation of his Fourteenth Amendment rights. This claim is similarly without merit.

"To pass constitutional muster, a capital sentencing scheme must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the

imposition of a more severe sentence on the defendant compared to others found guilty of murder." *Woratzeck v. Stewart*, 97 F.3d 329, 334 (9th Cir. 1996) (quoting *Lowenfield v. Phelps*, 484 U.S. 231, 244 (1988)). The Ninth Circuit, citing United State Supreme Court precedent, has rejected arguments that (F)(5) "is facially unconstitutional because it does not 'genuinely narrow the class of persons eligible for the death penalty' and does not 'reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder.'" *Williams v. Stewart*, 441 F.3d 1030, 1059 (9th Cir. 2006) (per curium); *Woratzeck*, 97 F.3d at 334.

Petitioner does not provide grounds for distinguishing his claims regarding the constitutionality of (F)(5) from the claims previously rejected in *Williams* and *Woratzeck*. Thus Claim 1C is without merit, and PCR counsel was not ineffective for failing to raise it. *See Sexton*, 679 F.3d at 1157. Petitioner has failed to make the necessary showing under *Martinez*.

Because Claims 1B and 1C are procedurally defaulted, they are not subject to habeas relief and are denied.

### c.     Claim 1D

Petitioner next argues that the cumulative effect of his trial counsel's errors during the penalty phase prejudiced him. (Doc. 22 at 79-80.) Petitioner acknowledges that he failed to include this claim in his petition for review of the denial of his PCR petition. (*Id.* at 79.) He argues that this failure was due to the ineffective assistance of his PCR counsel, and therefore his procedural default must be excused under *Martinez*. (*Id.*) Petitioner is incorrect.

*Martinez* has been interpreted narrowly. It applies only to ineffective assistance of trial counsel claims that were not raised at their first opportunity due to ineffective assistance of post-conviction counsel. *Davila*, 137 S. Ct. at 2065-66. Petitioner's first opportunity to argue that his trial counsel was ineffective under *Strickland* due to the cumulative strength of his penalty-phase errors was before the PCR court, and Petitioner took advantage of that opportunity. (PCR Petition at 39-40.) But the PCR court rejected

his argument, and Petitioner failed to seek review of that decision. Petitioner's failure to take advantage of the second opportunity to argue this claim does not implicate *Martinez*. *See Martinez*, 566 U.S. at 10 (noting that "attorney errors in *initial-review* collateral proceedings may qualify as cause for a procedural default" (emphasis added)). Petitioner's claim is therefore procedurally defaulted and is not subject to relief under the AEDPA.

Even assuming Petitioner's claim was not procedurally defaulted, it is without merit. Cumulative error occurs where, "although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors has still prejudiced a defendant." *Jackson v. Brown*, 513 F.3d 1057, 1085 (9th Cir. 2008) (quoting *Whelchel v. Washington*, 232 F.3d 1197, 1212 (9th Cir. 2000)). Prejudice occurs when the combined errors "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.*

Each of Petitioner's allegations of penalty-phase error has been addressed in detail above. The alleged errors, even when considered together, do not rise to the level of a due process violation or result in prejudicial error. Accordingly, Petitioner is not entitled to relief on his cumulative error claim. Claim 1D is denied.

### 2. Claim 2

Petitioner next claims that his counsel performed deficiently during the guilt phase of his trial. Specifically, he argues that his counsel failed to (A) call a ballistics and criminalist expert, (B) call a DNA expert, (C) object to the trial court's failure to call a mistrial during the guilt phase, (D) object to the trial court's *Enmund/Tison* instruction,[5] (E) conduct an adequate guilt-phase investigation, (F) subject the state's case to adversarial testing, and (G) make timely objections throughout the guilt phase. (Doc. 22 at 80-101.) Petitioner further asserts that the cumulative and prejudicial impact of these errors denied him his Sixth and Fourteenth Amendment rights (Claim 2H). (*Id.* at 102.)

The parties agree that Claims 2A, 2B, 2E, 2F, and 2G were exhausted in state

---

[5] *Tison v. Arizona*, 481 U.S. 137 (1987); *Enmund v. Florida*, 458 U.S. 782 (1982).

court.  (Docs. 22 at 83-101, 29 at 64-100.)  They further agree that Claims 2C and 2D were not raised in state court, but Petitioner alleges that he can establish cause and prejudice under *Martinez* to excuse the default of these claims.  (Doc. 22 at 89-92, 29 at 75-83.)  Petitioner does not state whether Claim 2H was properly exhausted in state court, but rather acknowledges Respondents' assertion that this claim was procedurally defaulted and states that if this Court agrees with Respondents, then the default should also be excused under *Martinez*.  (Doc. 35 at 39.)

### a.  Exhausted Subclaims

Claims 2A, 2B, 2E, 2F, and 2G were raised and denied on the merits in state court. The parties agree, and this Court finds, that these claims are exhausted and not procedurally defaulted.

### i.  Claim 2A

Petitioner argues that his trial counsel were deficient under *Strickland* because they failed to call ballistic or criminalist experts during the guilt phase.  (Doc. 22 at 29.) In support of this claim, he seeks to present additional supporting evidence, including the declaration of a ballistics expert, William Tobin.  (Doc. 40 at 25-26.)

When Petitioner raised this claim in his PCR proceedings, his PCR counsel alleged that a ballistics expert could have explained that it is possible that "more than two people" were involved in the murder.  (PCR Petition at 29-30.)  PCR counsel did not, however, offer statements or reports from a criminalist or ballistics experts to support this claim (*see id.*), and Petitioner does not now explain his failure to support this claim with evidence in state court.  Petitioner did not diligently pursue this claim as required under § 2254(e)(2), and he is therefore not entitled to evidentiary development here.

Furthermore, Petitioner cannot overcome the requirements of § 2254(d).  He does not point to any specific error of fact under § 2254(d)(2), and the PCR court did not misapply clearly established federal law to this claim under § 2254(d)(1).  Though its analysis was brief, the PCR court concluded trial counsels' decision to cross-examine the state's ballistics expert, rather than retain a rebuttal expert, was reasonable under the

*Strickland* standard and that any alleged error had not prejudiced Petitioner. (PCR Ruling at 12.)

The PCR court's conclusions are not objectively unreasonable. "*Strickland* does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense." *Richter*, 562 U.S. at 111. "In many instances cross-examination will be sufficient to expose defects in an expert's presentation." *Id.* The effectiveness of counsels' cross-examination may be questioned in hindsight, but that does not render the initial decision not to hire a rebuttal expert deficient. *See Strickland*, 466 U.S. at 689 (requiring that "every effort be made to eliminate the distorting effects of hindsight"). The PCR court was not unreasonable in concluding that Petitioner's counsel may have determined that cross-examination would be sufficient to challenge the state's ballistics expert.

The PCR court further noted that the state's ballistics evidence was consistent with the eyewitness testimony, and that retaining a ballistics expert could not have shed light on whether Sheffield or Petitioner shot the victim. (PCR Ruling at 12.) Although Petitioner alleges that a ballistics expert could have countered testimony that the same gun from this case was used in a prior robbery (*see* Doc. 22 at 83-84), there is not a reasonable probability that such testimony would have changed the result of Petitioner's trial. Ballistic analysis was a minor component of the case, which was instead primarily founded on eye-witness and DNA testimony. The state never established, or even attempted to establish, that Petitioner was the shooter. Testimony that one gun fired multiple bullets or may have been used in a prior robbery did little, if anything, to bolster the state's case against Petitioner.

Because Petitioner has not established that the PCR court's decision violates the standards set forth in §§ 2254(d)(1) or (d)(2), Claim 2A is denied.

### ii.     Claim 2B

Petitioner next alleges that his trial counsel provided ineffective assistance when they "failed to call a DNA expert during the guilt phase." (Doc. 22 at 30.) The key DNA

evidence linking Petitioner to the crime in this case was a shirt found near the crime scene. (RT 11/1/07 at 11:3-12:11, 17:13-20:10.) The shirt was tested for DNA, and the state's DNA expert testified that the shirt likely came into contact with at least three individuals, including Petitioner and the victim. (RT 11/5/07 at 33:12-35:2, 46:1-49:11.) On cross-examination, the witness further testified that the presence of DNA does not establish when the various individuals may have come into contact with the shirt. (*Id.* at 82:11-87:3, 88:18-89:11, 98:19-99:5.)

Petitioner notes that his trial counsel did retain a DNA analyst as a consulting expert but argues that his counsel failed to actually use that retained expertise when cross-examining the state's witnesses. (Doc. 22 at 87.) When Petitioner presented this claim to the PCR court, the court concluded that "counsel's performance was not deficient nor is prejudice demonstrated." (PCR Ruling at 13.) Petitioner now seeks to admit additional evidence related to the state's DNA analysis. (Doc. 40 at 26.)

First, as with Claim 2A, Petitioner does not explain his failure to fully support this claim when he raised it in state court. Petitioner did submit, with his PCR petition, a report from a DNA laboratory, and he does not explain why he could not have also included with his petition the additional evidence he now seeks to admit in this Court. Petitioner therefore has not established that he was adequately diligent under § 2254(e)(2). *See Rhoades*, 598 F.3d at 517.

Second, Petitioner cannot overcome the requirements of § 2254(d). As a preliminary matter, it is unclear from Petitioner's petition what, specifically, he alleges the PCR court got wrong when deciding this claim. (Doc. 22 at 87-89.) Instead, he relitigates his arguments from PCR proceedings and summarily asserts that the PCR court's ruling violated § 2254(d)(1) and (2).

The PCR court identified and applied the *Strickland* standard. It noted that the state's DNA witness was examined regarding who may have either worn or otherwise had contact with the shirt, and whether the presence of DNA could indicate when that contact happened. (PCR Ruling at 12-13.) The court further noted that the supplemental

DNA analysis PCR counsel submitted with this claim was consistent with the testimony elicited at trial:  the presence of DNA on the shirt did not definitively establish who actually wore the shirt or when.  (*Id.*)  It was not unreasonable for the court to conclude that the failure to present testimony from another DNA expert was neither deficient nor prejudicial.  *See Richter*, 562 U.S. at 111.

Claim 2B is denied.

### iii.    Claim 2E

Petitioner next claims that his trial counsel did not conduct an adequate guilt phase investigation.  In his PCR petition, Petitioner generally alleged that his trial counsel's guilt phase investigation was inadequate.  (PCR Petition at 2.)  In support of this argument, Petitioner referenced, but did not submit, the billing statements of the trial investigator.  (*See id.* at 15 n.1.)  The PCR court noted that Petitioner provided no facts in support of this claim and concluded that Petitioner's argument was so undeveloped that it had been waived.  (PCR Ruling at 18.)  The court went on, however, to conclude that the claim was also without merit.  (*Id.*)

In this Court, Petitioner again asserts that trial counsel's guilt phase investigation was deficient.  (Doc. 22 at 92-95.)  Specifically, he argues that "it was unreasonable for counsel to go to trial without conducting an adequate investigation or consulting experts regarding the crime scene, the police reports and witness testimony, and Garcia's version of what occurred the night Johnson was shot."  (*Id.* at 93.)  He bases these allegations primarily on the number of hours allegedly billed by lead counsel and the trial investigator regarding specific tasks, such as interviewing witnesses.  (*Id.* at 93-94.)  He now seeks to support this claim by submitting his defense team's billing records, police reports, emails between the prosecutor and the lead detective, and the lead detective's personnel file.  (Doc. 40 at 26-28.)

Petitioner missed the opportunity to present this evidence by failing to submit it in state court.  *See Williams*, 529 U.S. at 432.  Petitioner does not explain why PCR counsel referenced trial counsel's billing records yet failed to submit them, or why he otherwise

1    failed to provide evidence in support of this claim.  As such, Petitioner's counsel was not

2    sufficiently diligent for purposes of § 2254(e)(2), and he cannot now submit the evidence

3    he could have submitted in state court.  *See id.*

4           Evidentiary development of Claim 2E is denied.

5                         **iv.      Claims 2F and 2G**

6           Petitioner alleges that his defense team failed to subject his case to adversarial

7    testing by failing to file substantive motions and objections in response to the State's

8    substantive motions (Doc. 22 at 95-96), and failing to make timely objections during the

9    guilt phase (Doc. 22 at 99).  The filings and objections Petitioner's counsel did and did

10   not make are apparent on the face of the existing record.  Accordingly, there are no

11   disputed factual questions related to these claims and further evidentiary development is

12   not required to resolve them.  *See Landrigan*, 550 U.S. at 474; *Totten*, 137 F.3d at 1176;

13   *Beardslee*, 358 F.3d at 585.

14          Petitioner's request for evidentiary development of Claims 2F and 2G is denied.

15                         **b.      Defaulted Subclaims**

16          Petitioner asserts that he can overcome the procedural default of Claims 2C, 2D,

17   and 2H by establishing cause and prejudice under *Martinez*.  To support this argument,

18   Petitioner requests evidentiary development, including discovery, expansion of the

19   record, and an evidentiary hearing.  (*See* Doc. 40 at 38-40.)

20                         **i.      Claim 2C**

21          In Claim 2C, Petitioner asserts that his trial counsel's failure to request a mistrial

22   of the guilt phase resulted in a biased juror participating in the guilt-phase deliberations.

23   (Doc. 22 at 89-91.)

24          At the beginning of the aggravation phase, a juror informed the court that she was

25   concerned that a member of the gallery—who she believed may have been one of

26   Petitioner's relatives—may have come to her house on two separate occasions to offer to

27   do yardwork and purchase her car.  (RT 11/15/07 at 49:14-58:14.)  Although these

28   incidents occurred before the guilt phase ended, the juror did not associate them with the

trial until after the aggravation phase had begun.  (*Id.* at 61:6-24; 63:3-5; 64:19-65:19.)
Petitioner's counsel sought and received a mistrial of the aggravation phase.  (*Id.* at 95:18-99:3.)  Counsel did not request a mistrial of the guilt phase.  (*Id.*)

On direct appeal, Petitioner argued that the trial court should have, *sua sponte*, granted a mistrial of the guilt phase.  The Arizona Supreme Court concluded that the trial court acted "commensurate with the severity of the threat posed" by the jurors' conduct: "The risk of prejudice arose only after Juror P. connected the incidents to Garcia and told other jurors about them, possibly tainting their perceptions, all of which occurred after the guilt phase."  *Garcia*, 224 Ariz. at 11 ¶ 31, 226 P.3d at 380.

Petitioner does not now explain how the juror's conduct during the aggravation phase could have influenced the guilt phase of his trial.  Because Petitioner's claim lacks merit, it remains procedurally defaulted and is denied.

### ii.    Claim 2D

In Claim 2D, Petitioner asserts that trial counsel was deficient in failing to object to the trial court's *Enmund/Tison* instruction.  (Doc. 22 at 91-92.)  Petitioner acknowledges that his PCR counsel failed to raise this claim, and it has therefore been procedurally defaulted.  (*Id.*)  Petitioner alleges, however, that his default should be excused under *Martinez* and seeks an evidentiary hearing to establish cause and prejudice.  (*Id.*)

*Enmund* requires that the focus for purposes of capital punishment must be on the *defendant's* own conduct and culpability, not the actions of others involved in the crime.  458 U.S. at 798 (citing *Lockett v. Ohio*, 438 U.S. 586, 605 (1978) (noting that "individualized consideration [is] a constitutional requirement in imposing the death sentence")).  *Tison* requires that, "[f]or a death sentence to be constitutional under the Eighth Amendment, the state must show the defendant's '[1] major participation in the felony committed, [2] combined with reckless indifference to human life.'"  *Dickens v. Ryan*, 740 F.3d 1302, 1310 (9th Cir. 2014) (quoting *Tison*, 481 U.S. at 158) (finding that these two factors satisfy *Enmund*'s individual culpability requirement)).  The trial court

gave the following jury instruction on determining whether Petitioner was a "major participant" in the crime under *Tison*:

> In determining whether the defendant was a major participant in the felony, some factors to consider include: The degree to which the defendant participated in the planning of the felony, whether the defendant possessed a weapon or furnished weapons to his accomplice; the degree to which the defendant participated in the felony; the scope of the defendant's knowledge of the completion of the felony, *and whether the defendant reported the crimes*.

(RT 12/13/07 at 19:20-20:2 (emphasis added).) Petitioner's counsel did not object to this instruction, but appellate counsel raised the instruction as error in Petitioner's direct appeal.

The Arizona Supreme Court found that the above *Enmund/Tison* instruction was error: Petitioner's "failure to report the robbery after the fact does not bear on his participation in the robbery while in progress, and it was error to instruct the jury otherwise." *Garcia*, 224 Ariz. at 14 ¶¶ 50-51, 226 P.3d at 383. It concluded, however, that the error was not "fundamental," and therefore denied relief. *Id.*

For purposes of *Martinez*, Petitioner alleges that his PCR counsel was deficient for failing to raise this claim, and that he was prejudiced because the improper instruction undermined confidence in the jury's *Enmund/Tison* findings. He also argues that "had counsel objected to the erroneous instruction, the result on appeal may well have been different." (Doc. 35 at 35-36.)

The Court agrees that Petitioner's PCR counsel was likely deficient. When PCR counsel began working on this case, the Arizona Supreme Court decision was available to him. The court had clearly found that the instruction given to the jury was faulty, and it was clear from both the record and the court's decision that Petitioner's trial counsel had failed to object. It is likely that a minimally competent attorney working on a capital PCR petition would have raised as error trial counsels' failure to object to an instruction that the Arizona Supreme Court found erroneous on direct appeal.

Nevertheless, *Martinez* does not apply because Petitioner's underlying claim lacks

- 27 -

merit. *Cook*, 688 F.3d at 607. To the extent Petitioner's trial counsel was deficient for failing to object to the trial court's *Enmund/Tison* instruction, Petitioner has not established prejudice under *Strickland*.

As explained by the Arizona Supreme Court, Petitioner "initially entered the bar alone through the front door, which suggests that he was casing the scene. He and Sheffield later entered through the back door and Garcia shouted at Johnson to drop the money." *Garcia*, 224 Ariz. at 15 ¶ 56, 226 P.3d at 384. The evidence indicates that Petitioner was physically present and actively involved throughout the robbery. Furthermore, Garcia knew that Sheffield had previously shot someone during a separate bar robbery, giving him reason to believe that assisting Sheffield with a robbery would "carry a grave risk of death." *Tison*, 481 U.S. at 157. It is thus not reasonably likely that the result of the jury's *Enmund/Tison* decision would have been different had Petitioner's trial counsel objected to the erroneous instruction.

Petitioner's assertion that his counsels' failure to object to the instruction "very well may have" impacted his direct appeal is speculative and similarly without merit. *See Weaver v. Massachusetts*, 137 S. Ct. 1899, 1911 (2017) (noting that the burden is on the party claiming ineffective assistance of counsel to offer "evidence or legal argument establishing prejudice in the sense of a reasonable probability of a different outcome" (internal quotation marks omitted)). Petitioner has not established prejudice.

Because Claim 2D does not satisfy *Martinez*, it remains procedurally defaulted and is not entitled to habeas relief.

### iii.     Claim 2H

Finally, Petitioner alleges that the cumulative nature of his trial counsels' guilt-phase errors prejudiced him. (Doc. 22 at 102.) Respondents argue that this claim was procedurally defaulted. Petitioner responds that any default resulted from the ineffective assistance of PCR counsel. (Doc. 35 at 39.)

As with Petitioner's claim of cumulative error in the penalty phase, Claim 1D, this claim was raised in Petitioner's PCR petition (*see* PCR Petition at 40), but was not

included in his petition for review before the Arizona Supreme Court. Because Petitioner waived this claim by failing to raise it in his petition, it is procedurally defaulted.

Furthermore, as with Claim 1D, *Martinez* does not excuse the procedural default of Petitioner's PCR appellate counsel in failing to maintain on appeal the claim Petitioner already had the opportunity to raise, and did raise, in his PCR petition.

Claim 2H is procedurally barred and denied.

### 3. Claim 15

Petitioner asserts that he was denied the effective assistance of counsel in his direct appeal, but he did not present this claim to the PCR court. (Docs. 22 at 161, 29 at 100-01, 35 at 63-66.) Petitioner asserts that his procedural default of this claim is excused under *Martinez*, but that narrow exception does not apply to claims of ineffective assistance of appellate counsel. *See Davila*, 137 S. Ct. at 2062-66. Claim 15 is therefore procedurally defaulted and denied.

### B. Defaulted Claims

The parties agree that Claims 4 and 21 were not presented in state court. (Docs. 22 at 107, 189; 29 at 107, 165.) In Claim 4, Petitioner alleges that the trial court erred by admitting "scientifically unreliable ballistics evidence" in violation of his rights to due process and a fair trial (Doc. 22 at 107), and seeks an evidentiary hearing and expansion of the record related to this claim (Doc. 40 at 29-31). In Claim 21, Petitioner alleges that the trial court erred by admitting unreliable DNA evidence. (Doc. 22 at 189-92.) He seeks discovery, an evidentiary hearing, and expansion of the record related to Claim 21. (Doc. 40 at 35-37.)

Petitioner asserts that his procedural default of these claims is excusable due to his ineffective appellate and PCR counsel. (Docs. 22 at 107, 189; 40 at 38-40.) The Court disagrees.

The alleged ineffectiveness of his PCR counsel does not excuse Petitioner's default under *Martinez*. As described above, *Martinez* applies only to defaulted claims of ineffective assistance of trial counsel. *Davila*, 137 S. Ct. at 2065-66 (noting that

*Martinez* "applies only to claims of 'ineffective assistance of counsel at trial' and only when, 'under state law,' those claims 'must be raised in an initial-review collateral proceeding'"). Unlike allegations of ineffective assistance of trial counsel, Claims 4 and 21 could have been raised on direct appeal; therefore, they are not subject to the "limited qualification to *Coleman*" established in *Martinez*, 566 U.S. at 15.

The alleged ineffectiveness of Petitioner's appellate counsel does not excuse the default of these claims either. Before ineffective assistance of appellate counsel may be used as cause to excuse a procedural default, the particular ineffective assistance allegation must first be exhausted in state court as an independent claim. *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988) (citing *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)); *see Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (holding that "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted").

Before the PCR court, Petitioner raised his trial counsels' failure to present testimony from ballistics and DNA experts (PCR Petition at 29-31), but he did not raise related claims that his appellate counsel was deficient for failing to challenge the trial court's admission of the state's ballistics and DNA testimony. The alleged ineffective assistance of Petitioner's appellate counsel thus cannot serve as cause to excuse the procedural default of Claims 4 and 21.

Claims 4 and 21 are procedurally defaulted and denied.

## C. Exhausted Claims

Petitioner seeks to expand the record related to Claim 5, alleging "that the admission of Daniel Anderson's pretrial and trial identifications of Garcia resulted from unduly suggestive identification procedures" (Doc. 40 at 31), and Claim 9, alleging that Petitioner's death sentence violates his constitutional rights under the Eighth Amendment (*id.* at 32). Both claims were denied on direct appeal to the Arizona Supreme Court. *Garcia*, 224 Ariz. at 7-8 ¶¶ 16-12, 226 P.3d 370, 376-77 (identification); *id.* at 13 ¶¶ 40-46, 226 P.3d at 382 (Eighth Amendment).

As these claims have been decided on the merits by Arizona's courts, this Court's review is limited to the record that was before those courts unless Petitioner meets the § 2254(d) threshold. *See Pinholster*, 563 U.S. at 182.

### 1. Claim 5

Petitioner asks the Court to admit two exhibits that purport to corroborate his argument that the state used "unduly suggestive identification procedures" in violation of his due process rights. (Doc. 40 at 31-32.) The two exhibits are the lead detective's personnel file and a letter between Sheffield's attorney and a City of Phoenix transportation official. (*Id.*) Petitioner asserts that these proposed exhibits "demonstrate[] that the police were directly responsible for the images that were released to the media," which were then used to create fliers that the state's key witness saw before he identified Petitioner. (*Id.*)

The parties agree that this claim was exhausted in state court as part of Petitioner's direct appeal. (Docs. 22 at 110, 29 at 21.) The Arizona Supreme Court explained that the state could not have violated Petitioner's due process rights unless the allegedly suggestive identification was the result of "state action." *Garcia*, 224 Ariz. at 8 ¶¶ 9, 11, 226 P.3d at 377. The court then found that there was no state action in this case, where the police released images of Petitioner to the media, the police instructed the witness to avoid media related to the case, a third party used the images that were released to the media to create a flier linking the images to the crime, and the state's witness ultimately saw the fliers prior to identifying Petitioner. *Id.* ("That some unidentified third party may have used police-released photographs to create and distribute the flier does not constitute state action."). Having concluded that the allegedly unreliable identification was not a result of state action, the court found it unnecessary to evaluate whether the identification procedures were unduly suggestive in violation of Petitioner's due process rights. *Id.* at 8 ¶ 12, 226 P.3d at 377.

The court's decision does not unreasonably apply clearly established federal law or rely on unreasonable conclusions of fact under § 2254(d).

First, the Arizona Supreme Court did not misapply clearly established federal law under § 2254(d)(1). The Court concluded that "[t]he 'due process clause does not preclude every identification that is arguably unreliable; it precludes identification testimony procured *by the state* through unduly suggestive pretrial procedures.'" *Garcia*, 224 Ariz. at 8 ¶ 9, 226 P.3d at 377. This statement of law is wholly consistent with the United States Supreme Court's holding in *Perry v. New Hampshire*:

> Our decisions . . . turn on the presence of state action and aim to deter police from rigging identification procedures, for example, at a lineup, showup, or photograph array. When no improper law enforcement activity is involved, we hold, it suffices to test reliability through the rights and opportunities generally designed for that purpose, notably, the presence of counsel at postindictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt.

565 U.S. 228, 232-33 (2012).

If a court concludes, as the Arizona Supreme Court did here, that the state was not responsible for errors in the identification procedure, it need not address whether the identification must be suppressed. *See id.* Despite the court's conclusion that there was no state action, Petitioner nonetheless asserts that the court should have addressed whether, under the "totality of the circumstances," the identification was unreliable under *Neil v. Biggers*, 409 U.S. 188, 198 (1972). (Doc. 22 at 110.) But doing so would have been inconsistent with *Perry*. The Arizona Supreme Court did not unreasonably apply clearly established federal law.

Second, evidentiary development is not necessary to determine whether the state court made an unreasonable determination of facts under § 2254(d)(2). Petitioner alleges that, contrary to the Arizona Supreme Court's conclusions, "there was no definitive evidence that the fliers were not created or distributed by the police," and even if the police did not create the fliers, they were nonetheless "responsible for" the witness's "resulting exposure to them." (Doc. 22 at 114.)

Petitioner's allegation that the officers actually created the fliers in question is speculative and inconsistent with the record. As Petitioner concedes, a detective testified that the state obtained the photographs from the City of Phoenix and distributed them to the media, but did not create the fliers. (RT 8/31/07 at 54:3-7, 57:2-58:18.) This testimony was never contradicted and adequately supports the court's conclusion that the state did not create the fliers. The court's determination of facts was not unreasonable. *See Richter*, 562 U.S. at 109 ("In light of the record here there was no basis to rule that the state court's determination was unreasonable.").

Petitioner further argues that because the photographs ultimately made their way to the state's witness, releasing the photographs to the media was itself "state action" sufficient to trigger due process concerns. The existing record already indicates that the police department was responsible for releasing the images to the media. Whether releasing the images was "state action" for purposes of the due process clause is thus a question of law. *Cf. Arnold v. Int'l Bus. Machines Corp.*, 637 F.2d 1350, 1356 (9th Cir. 1981) ("If the actions of the state officers are not the proximate cause of the plaintiff's injuries, then there is no state action."). As such, evidentiary development related to this argument is not necessary. *See Beardslee*, 358 F.3d at 585 (evidentiary development unnecessary when there are no disputed facts).

Petitioner's request to expand the record in support of Claim 5 is denied.

### 2. Claim 9

Petitioner alleges that his death sentence violates his constitutional rights under the Eighth Amendment based on *Enmund/Tison*. (Doc. 22 at 122-36.) Petitioner specifically alleges that (A) the jury should have made its *Enmund/Tison* determination during the guilt phase or, alternatively, the trial court should have bifurcated the *Enmund/Tison* process and the aggravation phase; (B) the trial court committed structural error when it gave the jury an improper *Enmund/Tison* instruction; and (C) there was insufficient evidence to support the jury's *Enmund/Tison* finding. *Id.*

Although Petitioner does not specify which of these subclaims he believes is

entitled to evidentiary development, the Court notes as a preliminary matter that Claims 9A and 9B are questions of law that do not require further evidentiary development. *See Beardslee*, 358 F.3d at 585. Thus, to the extent Petitioner seeks evidentiary development to support Claims 9A and 9B, those requests are denied.

In support of Claim 9C, Petitioner seeks to expand the record with the addition of several police reports that he argues "demonstrate that . . . Garcia was not the shooter." (Doc. 40 at 39.) He also seeks to admit emails between three individuals—the prosecutor in his case, a detective, and Sheffield's attorney—which Petitioner asserts "emphasize[] Garcia's lesser culpability in this offense and why a death sentence is not appropriate or proportional in light of all the facts of the case." (Doc. 40 at 39-40.) The parties agree that this claim was exhausted in state court. (Docs. 22 at 135-37, 29 at 136.)

The Arizona Supreme Court reviewed the record to determine whether "[s]ubstantial evidence supports the jury's finding that [Petitioner] was a major participant in the underlying robbery" and acted with "reckless indifference to human life." *Garcia*, 224 Ariz. at 15 ¶¶ 56-57, 226 P.3d at 384. The court concluded that there was substantial evidence presented that Petitioner had "every reason to anticipate violence" and "played an active role in the murder." *Id.* at 15-16 ¶¶ 59-62, 226 P.3d at 384-85. In this Court, Petitioner broadly relitigates the claim he brought to the Arizona Supreme Court. He relies predominately on the same cases he cited in state court, including *Tison*, 481 U.S. at 158, and *State v. Lacy*, 187 Ariz. 340, 929 P.2d 1288 (1996).

Fairminded jurists could disagree as to whether Petitioner was a major participant in the crime, and thus the Arizona Supreme Court's analysis was not unreasonable. *See Richter*, 562 U.S. at 101. As the court noted, Petitioner entered the crime scene alone. He then went outside and came back in with Sheffield, who was crouching behind Petitioner with his gun drawn. There was also testimony that Petitioner yelled at the victim and may have pushed the victim in the course of the robbery. The victim's blood was found on a shirt that also contained Petitioner's DNA. It was not unreasonable for the court to find that this evidence was sufficient for the jury to conclude that Petitioner

was a major participant in the crime.  *Cf. Murray v. Schriro*, 882 F.3d 778, 814 (9th Cir. 2018) (affirming findings under *Enmund/Tison* where the petitioner had blood on his clothes, items from the crime scene, and had discarded a gun consistent with the gun used in the crime).

Furthermore, Petitioner's assertions that he was not recklessly indifferent to human life are conclusory at best.  Whether a defendant acted with reckless disregard for human life for purposes of the Eighth Amendment is not a "precisely delineate[d]" category of conduct.  *Tison*, 481 U.S. at 157-58.  Rather, the factfinder must, as the jury did here, evaluate the record to determine whether Petitioner was sufficiently culpable to warrant the death penalty.  The jury's conclusion that Petitioner acted with reckless indifference to human life, which was affirmed by the Arizona Supreme Court, is adequately supported by the existing record.  In addition to the above facts regarding Petitioner's participation in the crimes, Petitioner had participated in a prior robbery with Sheffield, during which Sheffield shot someone.  The Arizona Supreme Court was not unreasonable in concluding that Petitioner should have reasonably anticipated that Sheffield would again use lethal force in a subsequent robbery.  *See Garcia*, 224 Ariz. at 15 ¶ 59, 226 P.3d at 384 ("Garcia had every reason to anticipate violence, because he knew Sheffield had shot someone during the RNR Stix robbery just weeks before.").

Claim 9C is without merit, and Petitioner is not entitled to evidentiary development with regard to Claim 9.

**IV.    Conclusion**

For the reasons set forth above, Petitioner's requests for evidentiary development are denied.

Accordingly,

**IT IS ORDERED** denying Petitioner's Motion for Evidentiary Development. (Doc. 40.)

**IT IS FURTHER ORDERED** denying Claims 1B, 1C, 1D, 2C, 2D, 2H, 4, 15, and 21 as procedurally defaulted and barred from federal review.

**IT IS FURTHER ORDERED** denying Claims 1A, 2A, 2B, and 9C as meritless.

Dated this 28th day of September, 2018.

David G. Campbell
Senior United States District Judge